By the Court, Cowen, J.
The testator, so far as a direct disposition of his land was made by the will, devised particular estates to his wife and Pelletreau successively, for their support and maintenance, and the support and maintenance of his wife’s three daughters; remainder to the three daughters in *364 fee. Then follows a power,'first to his wife, and afterwards to Pelletreau, to sell the land, and invest the moneys arising from the sale in such manner as Aaron Burr should direct, for the purposes of the will. These purposes had been already declared. The particular estates only were for the common support and maintenance of all the devisees, and in these alone the interest of the devisees was common to the extent of their maintenance and support. The remainder vested as a distinct estate in the daughters ; an estate in which neither Mrs. Eden nor Pelletreau had any interest whatever. As to the land, that interest was clearly defined. The conversion of the land into money by a sale under the power, could of itself do no more than to raise corresponding interests in the proceeds. It would be the simple substitution of money for land, the interest of the devisees then being the same in the money as it was before in the land : that is to say, an interest in the income for maintenance, remainder absolutely to the daughters. To render this more clear, the will provided that the moneys should be vested and secured under the direction of Aaron Burr, who was made sole arbitrator of disputes concerning the division of the income and proceeds. No sale being made, or if made, he not being called on to perform that office, the interests would be left, in the one case, to the operation of the direct devises, and in the other, to their operation indirectly on the proceeds. In either view, so far as the remainder is concern ed, Mrs. Eden and Pelletreau having no interest whatever, the authority which they took under the will comes within the class of naked powers. In regard to their life estates, it was a power coupled with an interest, the right of support declared by the will. Beyond that, it was a mere power to sell the interest of others ; and the particular estates having ceased, we accordingly treated the power in question as a naked one, in Waldron v. McComb, (1 Hill, 111.) A devise that executors or others may sell is always a naked power. (1 Chance on Powers. 52, 3, Lond. ed. 1831.) There is no difficulty in seeing that a man may have a power coupled with an interest as to one estate, *365 and a naked power as to another estate in the same land. For instance, the same instrument may give him a power to sell a term for years, and take the purchase money for his own use, with power to sell the reversion for the benefit of another. The latter would be none the less a naked power, because the former vested a title in the donee. Legally speaking, the subject of the two powers is as distinct as if they had related to different tracts of land, the one leasehold, and the other freehold, like the will in Lancaster v. Thornton, (2 Burr. 1027.) I am unable to see, notwithstanding some of the arguments of learned judges in Osgood v. Franklin, (2 John. Ch. Rep. 20, 14 John. Rep. 554, 555, S. C. on appeal,) how the circumstance of an attorney with power to sell having at the same time a partial interest in the subject, can enlarge or in any way change the nature of his authority over the interest of his principal—the residue upon which the power is intended to operate. In respect to the first, his deed enures as a sale of his own property ; in respect to the latter, it is a sale by him as the attorney of another. Thus, a deed in fee from Mrs. Eden and Pelletreau, would carry their life estates ; but on any interest beyond that, their deed could stand on their power of sale only, independent of their life estates. The latter are gone by the death of both, and purchasers from them must look to the power alone. There was nothing in the purposes of the will, as connected with a sale, which required any thing beyond a mere power to effectuate. The case is not therefore within the principle which, from a necessity of carrying out consequences, will sometimes imply a trust or an interest in the donee of the power proportioned to those consequences. (Vid per Walworth, Ch. in Schauber v. Jackson, 2 Wend. 34.Bradstreet v. Clarke, 12 id. 663, 4.) Both sale and investment for the purposes of the will, could as well be effected under a naked power, as under the most liberal trust. Hence it becomes unnecessary to inquire whether Mrs. Eden or Pelletreau might not lawfully have converted the value of their entire life estates to the support of the devisees, themselves inclusive. Per *366 haps they might; but it seems to me a great and violent misconstruction to say that the testator intended the same thing of the remainder in fee. He may indeed have left an opening to such a consequence. Had the whole been sold under the power to bona fide purchasers, and the avails squandered, the devisees of the remainder would have been without remedy against the purchasers; but this would have been the effect of mistaken confidence, of mal-administration or fraud—a violation, not a fulfilment of the power. To regard the possibility that an attorney may wrongfully convert the proceeds of a sale to his own use and put his principal to a remedy against himself only, as conferring a legal interest, would be to erase the class of naked powers from the law. For the purposes of the present question, therefore, a question upon the sale of the remainder, I think we should be qbliged to regard the power in the will of Eden as belonging to the class of naked powers, and hold the purchasers responsible for excess in its execution, to the full amount of strictness which the law imposes upon a purchaser under such a power, were this strictness' necessary in order to test the title^ that was acquired under the master’s sale.
But it was agreed at the bar, that, for the purpose of deciding whether the will of Eden conferred a power to mortgage, or a power to dispose of the whole estate by the joint effect of a mortgage from Mrs. Eden, a foreclosure and sale with confirmation by Pelletreau, it is of little consequence whether the power be considered as naked, or coupled with an interest or trust. In either view, the question comes down to the intent of the testator as indicated by his language, and his object in creating, the power.
Let us then first consider the language of the power, which is simply to sell and convey. It was admitted at the bar, that these words do not in themselves, as a general rule, confer the power to mortgage. That they do not, is admitted in books of the highest authority, (1 Sugd. on Powers, 538, 61A Land. ech, 1 Pow. on Mort. 61, Rand’s ed. and note (1), 3 id. 1033, *367 note (a),) and insisted on at large by others ; (2 Chance on Powers, 388, Lond. ed. of 1831 ;) though the contrary has sometimes been asserted without sufficient qualification. (1st Am. from 3d Lond. ed. of Sugd. on Powers, p. 478 ; Savage, C. J. in Williams v. Woodard, 2 Wend. 492 ; Lord Macclesfield, C. in Mills v. Banks, 3 P.Wms. 9.) A man leaves with his neighbor a power of attorney to sell and convey his farm : who would ever suppose, had it not been for some random expressions in the books, that the attorney could give a mortgage, which, with us especially, is but a pledge to secure money loaned 1 A man tells another to sell his horse : who would say that he could pledge the horse for any sum he might borrow 1 Such a construction would be absurd ; and the most we can say is, that when the power is to sell, and something is added over and above, showing that the power of sale is not to be taken in its primary sense, but means a power to mortgage, there the donee may act accordingly. The principal may always make his own vocabulary. He may say, I authorize a sale, by which word I intend a mortgage. A power to sell and raise a sum of money has been said to evince that intent. This, however, is put by Sugden with a semble, and rests entirely on the dictum of Lord Macclesfield in Mills v. Banks. All the books are traceable to that; and no other authority was mentioned at the bar. Yet in the very same opinion he says : “ I cannot but think it to have been a due and just resolution in the case of Butler v. Dunscomb, that all trusts of terms directing the methods of raising money, imply a negative, viz. that the money should be raised by the methods prescribed, and not otherwise?’ Mr. Chance insists that the case of Mills v. Banks is misunderstood, when cited to show that a power of sale, even to raise a specific sum of money, will authorize a mortgage. (2 Chance on Pow. 388, Lond. ed. 1831.) When a man directs a sale of his land, whether his object be to raise money or not, he means to put it in market for what it will fetch at the time, and avoid the fluctuation of prices, An absolute title and delivery of possession will fetch more than a mere pledge ; at *368 any rate, there is a substantial difference between raising money by mortgage and sale; and it is enough to say that a power to raise it by one of these methods puts a negative on the other. I know the natural and obvious meaning of words has sometimes been departed from in chancery to such a degree, that á plain man might find himself singularly entrapped in giving his neighbor a power. An authority to raise money out of issues and profits, for instance, has on several occasions been construed to mean an authority to sell or mortgage, as may be seen in Allan v. Backhouse, (2 Ves. & Beam. 65,) and the cases there cited. It was admitted that the natural meaning of the words issues and profits, was annual rents and profits; and the only excuse given by the vice chancellor, (Sir T. Plumer,) even in that extraordinary case, was, that his predecessors had, in similar cases, done the same thing. He seems to admit, that had the case been new, he should have doubted of the interpretation ; but adds: “It is now too late to speculate. This court having by a technical, artificial, but liberal construction, in a series of authorities, admitting it not to be the natural rfeaning, extended those words, when applied to the object of raising a gross sum at a fixed time, when it must be raised and paid without delay, to a power to raise by sale or mortgage j unless restrained by other words.” In short, it is only on such pressing exigencies that the court have ever gone into a forced and unnatural interpretation. A similar caution at least, I apprehend, must be applied to a power of sale ; and the books which treat of mortgages are approaching that point. In 1 Rand’s Pow. 61, it is said, that a power of sale for the purpose of raising money for payment of portions, debts, 8fc., implies a power to mortgage. Even this, however, is too unqualified. (2 Chance on Powers, 388 to 390, Bond. ed. 1831.) The mere raising of money for such purposes is not enough. There must, I apprehend, as under a power to collect a sum from issues and profits, be some pressing exigency apparent on the face of the will or power. Accordingly, the strength of both sets of words in the same will has been recently tried in the *369 English chancery, where, no such exigency being apparent, the liberal interpretation was denied. (Haldenby v. Spofforth, 1 Eng. Jurist, Am. ed. of 1840, by Halsted & Voorhies, p. 198.) Haldenby devised a dwelling house to his wife for life ; and, subject to that, all his real estates to his executors in fee, and all his personal estate to them absolutely, the whole upon trust that they should sell his real and personal estates as soon as convenient, by private sale or public auction, in such lots and at such time or times as to them should seem fitting, for the most money and best price, &c.; they to apply the avails of such sales, See., and the issues and profits of his real estate, first, to pay his debts, fyc., next, to invest 30001., and pay the income to his wife for life, 1200/. to each of his daughters, the residue to be divided among his sons; with clauses for the maintenance and education of his sons out of the income, and for the accumulation of the overplus. Under this power, the trustees borrowed 16001. of T. Musgrave, and gave him a mortgage in fee of certain cottages and premises belonging to the estate. A bill was filed, praying that the mortgage might be set aside ; and on the argument, both the dictum of Lord Macclesfield in Mills v. Banks, and the decision in Allan v. Backhouse, were pressed upon the master of the rolls, (Lord Langdale,) as in point; the first as authorizing the mortgage on the power to sell, and the last as authorizing’ the same thing under the power of the trustees to avail themselves of the issues and profits. Lord Langdale thought the testator contemplated the conversion of the whole of his property by a sale out and out; that there was nothing in the will to authorize the raising of any sum or sums of money by mortgage. “ There was not a power to raise a specific sum.” He therefore set aside the mortgage ; saying that, in his opinion, the mortga gee had not a valid title.
There, was a mortgage by the trustees who had a valid title in themselves at law. A mortgagee without notice would therefore have taken a paramount title even in equity—at law, with or without notice—and hence the cestuis que trust came *370 to chancery, where it was seen that the purchaser took under a deed reciting the will. Had the power been a naked one, or had there been no estate in the trustees commensurate with that granted to the mortgagee, the mortgage would have been void both at law and in equity, on the construction which Lord Langdale affixed to the power.
Thus we have an adjudication on a trust in fee, with power to raise money both by sale and by issues and profits, the proceeds to be invested and otherwise applied to the uses of the will. But all combined were held unequal to the mortgage of a small parcel to secure a sum of money borrowed by the trustees, as such, for the use of the estate. It is scarcely necessary to observe that the case decides enough, and a good deal more than enough, to avoid the mortgage nowin question. The primary object of the will was to raise funds. Every thing was to be converted into money by private sale or by auction, from time to time. A mortgage has been said to be within these words, because it is a conditional sale. That reason was overruled in the case cited. Absolute necessity apparent in the will, has been mentioned as another reason. No such necessity appeared in that case ; and none appears in the case at bar. It was said in argument, and this was the only answer attempted, that the power in Haldenby v. Spofforth tied up the trustees to a particular mode of disposition ; whereas it appears to me even broader than the present power. It was to sell from time to time, as opportunity presented, either at private or public sale, and, in the meantime, take the issues and profits. That the best price was to be obtained, is always implied as the attorney’s duty. In Haldenby v. Spofforth, as here, there was to be an investment of the proceeds for the purposes of the will; and, if there could be any doubt upon the words taken alone, what testator of a mind sufficiently sane to make a will, ever conceived the idea of borrowing money on mortgage for the purposes of investment 1 With deference, it seems to me that we are called upon to depart from the office of construction, and invited into a mere straining and perversion of words. It is *371 said that a mortgage is many times the best mode of raising money. So is leasing or investing in stocks. The argument proves too much. It calls upon us, by departing from the testator’s method, to make a will for him.
The mortgage, therefore, being a nullity, and the decree and sale founded on it being, of course, equally so ; we then have the deed of Pelletreau, who, by the death of Mrs. Eden, succeeded to her power. This deed, taken by itself, purports, without consideration, to be a mere confirmation of Mrs. Eden’s void mortgage and the master’s void sale. The title was still in the daughters, and could not be divested except by a sale for cash, or for something equivalent, that might be invested for the purposes of the will. So we have repeatedly held of this very power, first in Waldron v. M’Comb, (1 Hill, 111,) and again in several cases coming nearer to the present. In short, we have again and again held, that the power in question conferred no right on the donees to convey the lands of Eden’s estate on mere equitable or moral considerations, however strong or imposing they might be ; and that where such appeared on the face of the deed, though accompanied with a pecuniary consideration, the conveyance was void.
But, however the mortgage and Pelletreau deed maybe considered separately, it is insisted that conjunctly they may operate to transfer a title. It is said that Mrs. Eden’s mortgage being valid in respect to her own life estate, it was therefore a part execution of the power on full consideration, and that Pelletreau’s deed may be received as a complete execution ; the exercise of the power being divisible within the rule respecting powers of appointment and revocation. (Sudg. on Powers, 357, 6th Lond. ed.) It is a sufficient answer, that neither Mrs. Eden’s mortgage nor Pelletreau’s deed can, beyond their own estates, be regarded as operating in virtue of the power. The legal effect of the transaction between Mrs. Eden and Remsen was a loan by the latter on a mortgage from the former of her life estate coupled with her own personal responsibility. I endeavored in the outset to distinguish between the *372 interest and the power of the life-tenants, and to show that any property which they had either in the land or the proceeds could not be considered as coupled with the power, or aid it in any way with respect to the remainder. I admitted that their respective conveyances transferred their own estates, but nothing more. Their professions of acting under the power amount to nothing, While it is seen on the face of the transaction, that they were, in truth, going entirely wide of it. Mrs. Eden’s was her own private transaction ; and the money she obtained could not be connected as the consideration of Pelletreau’s deed, so as to satisfy the power. She was not, beyond her own estate# even accountable for the money to the family. It was her own, and on the sale by the master, if she had been alive, and her estate had remained, she alone would have been entitled to the surplus. As the matter stood, the surplus went to Pelletreau by a sort of bargain for a void deed from him of the remainder ; a bargain which, under common consent, was ratified by an order in chancery. He was accountable to no one for the surplus. The whole were mere private transactions between Mrs. Eden and Remsen, Pelletreau and West. I speak all this time of the remainder. In respect to the life estates# Mrs. Eden and he were trustees. So far as the transaction can be taken to concern those estates, and looks to their value, the case may be different.
But the rule of divisible execution has ho application. The authorities cited are Co. Litt. 113, (a), and Digge’s case, (1 Rep. 173.) These show that on a power to revoke uses, they may be revoked as to part of the land at one time and part at another. So on a power to sell land ; the attorney may sell part at one time and part at another. So of a power to ap ■ point; a part may be appointed at one time and a part at another. (Zouch, exdem. Woolston, v. Woolston, 2 Burr. 1136.) Admitting that these cases hold to the full extent insisted on, though the last was quite special, in each the trustee or attorney is found doing an act of the precise nature prescribed by the pbwer—an act Of revocation, sale or appointment. He *373 does not proceed by splicing two or three acts together, which in their whole effect work out a revocation, sale or appointment, by consequence or operation of law. On the power of sale, he sells part of the estate. He neither mortgages nor demises, and afterwards grants the reversion. He sells part of the land at one time, and part at another. So he may, under the other powers, revoke or appoint as to different parcels at different times ; but the act done is in specie the very act required by the power. I do not go over the cases. They are mostly collected in Sugden on Powers, 357, et seq., Qth Land. ed.; and will be found to sustain the distinction I have suggested.
I do not deny the hardship of this case on the defendant below ; nor the pleasure I should have felt, could I have brought myself to see that this power was properly executed in any view which the learned counsel for the defendant has taken. Having failed in doing so, I am of opinion that the judgment below should be affirmed.
Judgment affirmed.